Filed 3/10/26  In re L.G. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re L.G., a Person Coming Under the Juvenile Court Law. | B341678 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MICHAEL M.,<br><br>　　　Defendant and Appellant. | (Los Angeles County Super. Ct. No. 24CCJP02378A) |

APPEAL from an order of the Superior Court of Los Angeles County.  Daniel Zeke Zeidler, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

## INTRODUCTION

Michael M. (Father) appeals from the juvenile court's jurisdictional findings and dispositional order, declaring his minor son, L.G., a dependent of the court under Welfare and Institutions Code[1] section 300, subdivisions (a), (b), (c) and (d), and removing L.G. from Father's custody. On appeal, Father argues the juvenile court should have dismissed the dependency petition because L.G.'s mother was a nonoffending custodial parent and the child was safe in her care. We conclude the juvenile court did not err in sustaining the petition to protect L.G. from Father's abusive conduct. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    Section 300 petition

Father and Heather P. (Mother) are the parents of L.G., a boy born in December 2010. Prior to the start of these proceedings, Mother had primary physical custody of L.G. and the parents shared joint legal custody. In June 2024, when L.G. was 13 years old, the child began staying with Father for his summer break from school.

On July 20, 2024, police were called to Father's home regarding a report of child abuse. L.G. told the officer that the day before, July 19, Father physically assaulted him by pulling his hair, pushing him, striking him with a belt on his arms and chest, pressing an arm against his throat while holding him down, and punching him several times in his stomach. On that night, L.G. called Mother, who was in Las Vegas, and told her that Father beat and choked him. In addition, L.G. sent Mother

---

[1]     Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

text messages asking her for help, including one that stated, "[H]e's gunna kill me and choked me hard." L.G. also sent Mother photos of the injuries that he sustained, which showed redness on his arm and chest. In response, Mother told L.G. to lock his bedroom door, and his aunt would pick him up in the morning.

The following morning, July 20, L.G.'s aunt picked up the child from Father's home, but brought him back in the afternoon. Later that day, Father had another altercation with L.G. during which he broke the child's bedroom door and pushed him against a television. L.G. again called Mother, who then contacted the police. L.G. was taken to the hospital, and Father was arrested and charged with corporal injury on a child. When the investigating officer asked Mother why she initially called L.G.'s aunt rather than the police, she stated that she wanted to get L.G. out of Father's home as soon as possible.

The Los Angeles County Department of Children and Family Services (DCFS) received an immediate response referral regarding Father's alleged physical abuse of L.G. In an interview with DCFS, L.G. reported that, during the July 19 incident, Father pulled his hair, pushed him several times, and punched him twice in the stomach with a closed fist. When L.G. called Mother to report the abuse, she replied that his aunt would pick him up in the morning. L.G. stated that he felt safe in Mother's care, but did not want contact with Father. A forensic exam of L.G. showed that the child had red marks and bruises on various areas of his body, including his neck, chest, and arms, and that his injuries were consistent with a history of physical abuse.

In her interview with DCFS, Mother confirmed that L.G. called and texted her on the night of July 19, and told her that

Father choked, pushed, hit, and punched him. Mother contacted L.G.'s aunt rather than the police that night because she thought the aunt could get to L.G. sooner and keep him safe. Mother later learned that the aunt took L.G. back to Father's home. The following day, L.G. again called Mother, and she overheard Father repeatedly yelling at the child, " 'Get the fuck out.' " Mother then told L.G. to grab his belongings and go outside while a friend who was with her called the police. In his interview with DCFS, Father denied that he assaulted L.G. Father stated that L.G. kicked and punched him during the July 19 incident, that L.G.'s injuries were self-inflicted, and that the child often stole from him and others at his home. When told that L.G. would be released to Mother, Father replied, " 'Good because the child is a thief.' " On July 23, 2024, a criminal protective order was issued, prohibiting Father from having any contact with L.G. until further court order.

On July 31, 2024, DCFS filed a dependency petition for L.G. under section 300, subdivisions (a) and (b) based on Father's alleged physical abuse of the child. At a detention hearing held on August 14, 2024, the juvenile court detained L.G. from Father and released the child to Mother pending adjudication of the petition. The court also ordered no contact between Father and L.G.

**2. Amended section 300 petition**

In September 2024, DCFS conducted further interviews with the family for its jurisdiction/disposition report. In his interview, L.G. maintained that Father physically abused him on July 19 and 20, 2024, by pushing, punching, and attempting to choke him. L.G. reported that Father was drunk during the July 19 altercation, and that Father regularly used alcohol and

marijuana while the child was in his care. L.G. recorded part of the July 19 incident with his cell phone, and Father could be heard in the video stating, " 'Why are you locking the door? You little faggot. That's what scary niggas do. They lock the door.' " In his interview, L.G. also described other occasions when Father was verbally abusive toward him. In addition, L.G. disclosed that Father once grabbed his penis while making a vulgar remark, and that Father made inappropriate sexual comments and engaged in sexual activity with his girlfriend in the child's presence. L.G. was adamant that he did not want any contact with Father.

In her interview with DCFS, Mother denied knowledge of any physical abuse by Father prior to the July 19 incident. Mother also was unaware of any acts of sexual abuse, but she had heard Father make inappropriate sexual comments in L.G.'s presence when he was under the influence of alcohol. Over the summer, Father sent Mother texts expressing his frustration with L.G. and stating, " 'I'm going to fuck him up and send him back to you.' " During a telephone call with L.G., Mother also overheard Father tell the child, " 'If you don't pick up your room or do the dishes, I'm going to fuck you up!' " L.G. later told Mother that Father would get drunk and call him derogatory names such as "pussy," "faggot," and "bitch." Mother reported that L.G. had been struggling with anxiety, depression, and difficulty sleeping since the July 19 incident, and that it would be detrimental for the child to have any further contact with Father. Mother also stated that she planned to seek sole legal and physical custody of L.G. in family court.

In his interview with DCFS, Father continued to deny that he physically abused L.G. Father further denied that he engaged

5

in any sexual abuse, emotional abuse, or drug and alcohol abuse. In describing the July 19 incident, Father maintained that L.G. was the aggressor, and claimed the child " 'set [him] up' " to put him in jail so that L.G. and Mother could rob him. Father also blamed Mother for L.G.'s behavioral issues, and indicated that he could have helped if Mother allowed him to be more involved. However, Father stated that L.G. had "burned his bridges" with him, and that he "did not want the child in his life right now." In addition to interviewing the family, DCFS spoke with several of Father's friends who were present at his home during the July 19 incident, and they each supported Father's account that he did not engage in any abusive conduct toward L.G.

On September 26, 2024, DCFS filed an amended petition under section 300, subdivisions (a), (b), (c), and (d). The amended petition added counts based on Father's alleged sexual abuse, emotional abuse, and substance abuse. It also added allegations that Mother failed to protect L.G. from Father's inappropriate sexual comments and abuse of alcohol while the child was in his care.

### 3.    Jurisdictional and dispositional hearing

Starting on October 17, 2024, the juvenile court held a combined jurisdictional and dispositional hearing. In response to DCFS's request to call Father as a witness, Father asserted his Fifth Amendment right not to testify. In her testimony, Mother stated that when Father made sexual comments around her or L.G., she told him that it was inappropriate to do so. Mother also testified that when she sent L.G. to stay with Father for the summer, she was not aware that Father had any current issues with alcohol, and that L.G. first mentioned Father's drinking when he called her the night of the July 19 incident. Mother's

6

counsel asked the court to strike the allegations in the petition related to Mother, and Father's counsel similarly requested that the petition be dismissed as it related to Father. Counsel for L.G. and counsel for DCFS argued the court should sustain the physical, sexual, emotional, and substance abuse counts alleged against Father, and counsel for DCFS also asked the court to sustain the failure-to-protect allegations against Mother.

After hearing the argument of counsel, the juvenile court dismissed the failure-to-protect allegations against Mother and sustained amended versions of the counts alleged against Father based on his physical, sexual, and emotional abuse of L.G. and his substance abuse. In sustaining the counts based on Father's conduct, the court found L.G. "to have been very credible in his statements to [DCFS] and the details and consistency."

Turning to disposition, the court declared L.G. a dependent of the court under section 300, subdivisions (a), (b), (c), and (d), removed him from Father's custody, and ordered that the child remain released to Mother. The court then terminated dependency jurisdiction with a custody order that granted sole legal and physical custody to Mother and no visitation to Father. The court also ordered that L.G. attend therapy, and that Father comply with the existing criminal protective order.

Father filed a timely appeal from the jurisdictional findings and dispositional order.

## DISCUSSION

On appeal, Father does not challenge the sufficiency of the evidence supporting the jurisdictional findings based on his conduct or the dispositional order removing L.G. from his custody. Rather, Father's sole contention on appeal is that the juvenile court should have dismissed the section 300 petition

because Mother was a custodial and protective parent, and thus, there was no need for dependency jurisdiction over L.G.  We conclude Father's argument lacks merit.

We generally review challenges to the sufficiency of the evidence underlying jurisdictional findings and dispositional orders for substantial evidence.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  However, where, as here, the claim on appeal is that the juvenile court erred in denying a request to dismiss a section 300 petition, we review the court's ruling for abuse of discretion.  (*In re K.S.* (2016) 244 Cal.App.4th 327, 339–340; accord, *In re A.F.* (2024) 102 Cal.App.5th 778, 786.)  "A court abuses its discretion 'if its determination is arbitrary, capricious or patently absurd.' " (*In re A.F.*, at p. 786.)

"A juvenile court may assume jurisdiction over a child described in Section 300 regardless of whether the child was in the physical custody of both parents or was in the sole legal or physical custody of only one parent at the time that the events or conditions occurred that brought the child within the jurisdiction of the court."  (§ 302, subd. (a).)  Therefore, "[o]nce the child is found to be endangered in the manner described by one of the subdivisions of section 300[,] . . . the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred.  [Citation.]  For jurisdictional purposes, it is irrelevant which parent created those circumstances." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491–1492.)  It "is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child." (*Id.* at p. 1491; accord, *In re H.R.* (2016) 245 Cal.App.4th 1277, 1285–1286.)  Accordingly, the fact

that L.G. was in Mother's care and custody at the time of the adjudication hearing did not preclude the court from asserting jurisdiction based solely on Father's endangering conduct.

Citing *In re A.G.* (2013) 220 Cal.App.4th 675 (*A.G.*), Father argues the juvenile court should have dismissed the section 300 petition because Mother was nonoffending and able to protect L.G. from any risk of harm posed by Father without the need for court supervision.  In *A.G.*, the appellate court reversed a jurisdictional finding based on the mother's mental illness where the father was able to provide proper care and supervision such that there was no risk of harm to the children.  (*Id.* at p. 686.) The court found that, while the mother's mental illness rendered her unable to care for the children, the father, who resided in the same home, was capable of protecting them and had done so by ensuring there was always a responsible adult present to care for them.  (*Id.* at pp. 683–684.)  The court reasoned that, under these circumstances, the juvenile court should have dismissed the section 300 petition and stayed its order until the father obtained an award of custody in family court.  (*Id.* at p. 686.)

Father's reliance on *A.G.*, *supra*, 220 Cal.App.4th 675, is misplaced.  While the mother in *A.G.* was unable to provide the children with regular care and supervision, "no harm to them had been reported" on the one occasion that the children were left in the mother's care.  (*Id.* at p. 684.)  In this case, however, L.G. suffered serious harm while residing with Father.  During their July 2024 altercation, Father pushed, punched, and attempted to choke L.G., leaving visible marks and bruises on various areas of the child's body.  On other occasions, Father sexually abused L.G. by forcefully grabbing the child's penis and exposing him to inappropriate sexual comments and behavior.  In addition,

9

Father was verbally abusive when he was under the influence of alcohol, causing the child to experience emotional distress.

Moreover, unlike the nonoffending father in *A.G.*, Mother did not reside in the same home as Father, and had not always been able to protect L.G. from Father's abusive conduct. While Mother later told DCFS that she regretted sending L.G. to stay with Father and planned to seek sole custody of the child following the July 2024 incident, there was no pending family court case at the time of the adjudication hearing. In any event, "[n]othing in *In re A.G.* . . . purported to authorize a juvenile court to skip the evidentiary hearing on jurisdiction or to apply a rule of abstention just because a nonoffending parent could gain custody of the child in an ongoing family court proceeding." (*In re Nicholas E.* (2015) 236 Cal.App.4th 458, 465.)

Under these circumstances, the juvenile court properly asserted jurisdiction over L.G. to protect the child from Father's endangering conduct. Then, after finding that L.G. could be safe in Mother's care, the court properly terminated jurisdiction with a custody order that granted sole legal and physical custody of the child to Mother and no visitation to Father. On this record, the juvenile court did not abuse its discretion in denying Father's request to dismiss the section 300 petition.

10

## DISPOSITION

The jurisdictional findings and dispositional order are affirmed.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


SCHERB, J.

11